United States District Court
Southern District of Texas
**ENTERED**
February 09, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DOCK PARTNERS MANAGEMENT, LLC, § § Plaintiff, § VS. § SHIANN KELLDORF, *et al*, § § Defendants. § | CIVIL ACTION NO. 4:20-CV-3689 |

## ORDER

Pending before the Court is the Defendant Shiann Kelldorf's Amended Motion to Dismiss (Doc. No. 10). The Petitioner Dock Partners Management, LLC ("Dock Partners") filed a response (Doc. No. 8) and Kelldorf filed a reply (Doc. No. 11). After considering the motion, briefing, and applicable law, the Court hereby grants the motion.

### I.     Background

This case stems from an accident that happened while Kelldorf was on a boat owned by Dock Partners on Lake Conroe. The parties appear to dispute the exact circumstances of Kelldorf's injury. Kelldorf contends that she and friends rented a pontoon boat from Dock Partners and, while she was a passenger "joy riding around Lake Conroe," the boat ran out of gas. (Doc. No. 10 at 3). An employee of Dock Partners was operating the boat. (*Id.*). He lowered the boat's anchor prior to refueling, but forgot to retrieve it from the water "before accelerating the boat forward at a high rate of speed," which caused the anchor to "sling shot" forward and strike Kelldorf on the side of her face. (*Id.*). Dock Partners contends instead that a member of Kelldorf's party lowered the anchor without the knowledge of the employee operating the boat. (Doc. No. 8 at 2). This factual dispute, however, is not relevant to the disposition of the current motion and need not be resolved here.

Kelldorf filed a state court action against Dock Partners and other defendants in Montgomery County, Texas alleging common law tort claims. *See Shiann Kelldorf v. Dock Partners Management, LLC D/B/A Nauti-Dayz Boat Rentals, et al.*, No. 20-07-08746 (457th Dist. Ct., Montgomery County, Tex. July 24, 2020). That case remains pending. Dock Partners subsequently filed its Verified Complaint for Exoneration from or Limitation of Liability in this Court under 46 U.S.C. § 3501, *et seq.* (the Limitation of Liability Act) and Rule F of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. (Doc. No. 1); *see* 46 U.S.C. § 30511 ("The owner of a vessel may bring a civil action in a district court of the United Sates for limitation of liability under this chapter."); Fed. R. Civ. P. Supp. AMC Rule F(1) ("Not later than six months after receipt of a claim in writing, any vessel owner may file a complaint in the appropriate district court . . . for limitation of liability pursuant to statute."). Kelldorf has moved to dismiss this action under Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that this Court does not have admiralty jurisdiction.

## II.   Legal Standard

A party may move to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. Fed. R. Civ. Pro. 12(b)(1). "Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). The Limitation of Liability Act does not confer jurisdiction upon federal courts, so there must be an independent basis for federal jurisdiction. *In re S. Recycling, L.L.C.*, 982 F.3d 374, 378 (5th Cir.

2

2020); *see also Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995) (engaging in jurisdictional analysis in a limitation of liability action).

When a party mounts a "factual attack" on the existence of subject matter jurisdiction, the Court may consider matters outside the pleadings, such as testimony and affidavits. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Moreover, once a defendant makes a factual attack and provides evidence to support same, the "plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Cell Sci. Sys. Corp. v. La. Health Serv.*, 804 Fed. Appx. 260, 264 (5th Cir. 2020) (quoting *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). In such a situation, "no presumptive truthfulness attaches to the [plaintiff's] jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (quoting *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981)).

Federal courts' authority to decide admiralty cases comes originally from the Constitution, U.S. Const., Art III, § 2, and Congress has codified such authority, giving federal district courts original and exclusive jurisdiction of "[a]ny cause of admiralty or maritime jurisdiction ...." 28 U.S.C. § 1333(1). The test for whether admiralty jurisdiction is present is two-fold—"a party seeking to invoke federal admiralty jurisdiction . . . must satisfy conditions both of *location* and of *connection* with maritime activity." *Grubart*, 513 U.S. at 534 (emphasis added). First, under the location test, the Court must determine "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Id.* Next, the connection test is satisfied when there is a sufficient relationship of the vessel to maritime activities. *Hardwick v. Pro-Line Boats, Inc.*, 895 F.Supp. 145, 146–47 (S.D. Tex. 1995).

3

### III. Analysis

Here, Dock Partners claims in its complaint that this Court has jurisdiction:

> by virtue of 28 U.S.C. § 1333, including but not limited to, because the alleged incident involved a vessel operating on the navigable waters of Lake Conroe, which lake was formed from a navigable river, and capable of supporting maritime commerce, such as the Vessel Livery operated by Doc [sic] Partners Management, LLC. ("DPM"), among other commercial ventures on Lake Conroe involving the transportation and persons on and about the waters of Lake Conroe, and that this satisfies the requirements for invoking the Court's admiralty jurisdiction.

(Doc. No. 1 at 2). Kelldorf argues that Dock Partners cannot meet its burden to invoke federal jurisdiction because Lake Conroe is not a navigable waterway. (Doc. No. 10 at 5).

The threshold question, then, is whether Lake Conroe is a navigable waterway. The seminal case announcing the test for navigable waters is *The Daniel Ball*, which announced the following:

> Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. And they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water.

77 U.S. 557, 563 (1870). The Fifth Circuit has distilled that test and stated that "navigable waters of the United States are those waters capable, in fact, of navigation in interstate travel or commerce, and distinctions between natural and man-made bodies of water are immaterial." *Sanders v. Placid Oil Co.*, 861 F.2d 1374, 1377 (5th Cir. 1988).

### A. The Court will not defer ruling.

First, Dock Partners asks that this Court defer ruling on the Motion to Dismiss until "after discovery on the navigability of Lake Conroe" has completed. (Doc. No. 8 at 2). Dock Partners speculates that this "jurisdictional issue may also require an evidentiary hearing as this critical

4

jurisdictional issue raises fact questions which can only be fairly determined after the parties have had the opportunity to conduct discovery on this issue." (*Id.* at 2–3). Essentially, Dock Partners wants this Court to conduct a mini-trial on the issue of navigability. The Court finds such a hearing and additional discovery to be unnecessary.

There are no documents or information relating to the navigability of Lake Conroe within the possession of Dock Partners' opponent such that Dock Partners requires the formal discovery process to obtain them. Instead, all information on this issue is external to the parties. As the party invoking this Court's jurisdiction, Dock Partners bears the burden to show federal jurisdiction exists, so it should have been prepared to meet that burden when it filed this action. Accordingly, the Court sees no reason to delay ruling.[1]

**B.    Navigability of Lake Conroe**

In support of her contention that Lake Conroe is not navigable, Kelldorf provides the Court with an affidavit of Jace Houston, the General Manager of water operations for the San Jacinto River Authority. (Doc. No. 10, Ex. 1). Houston states in his affidavit, among other points, that:

- Lake Conroe is a manmade lake existing wholly in Montgomery County, Texas,

- the headwaters of Lake Conroe are formed by the west fork of the San Jacinto River,

- Lake Conroe is contained by the Lake Conroe Dam, which is located along the south shoreline of the lake,

---

[1] Dock Partners also argues that:

> the issue of jurisdiction should be addressed in an orderly, coordinated manner, with the involvement of all parties (Kelldorf and all other Claimants), as opposed to being raised by a single Claimant in a Rule 12 Motion. On this point, the Kelldorf Motion was filed before all claimants had even properly been notified of the Limitation Action, let alone having been afforded the opportunity to file claims and be heard by this Court.

(Doc. No. 8 at 3). It is unclear to the Court, given that Kelldorf was allegedly the only person injured in the underlying incident, what other claimants Dock Partners expects. In any event, the deadline to file claims was December 30, 2020 (Doc. No. 7 at 2) and Kelldorf is the only person who has done so (subject to the instant Motion). (*See* Doc. No. 12).

- Lake Conroe does not connect with any other streams or rivers that would allow a vessel from interstate or international waters to access it,
- Lake Conroe has never been accessible, either through ingress or egress, for vessels conducting interstate or foreign commerce and/or travel, and
- the Lake Conroe Dam does not contain, and has never contained, any locks or other structures which would allow a vessel to navigate through the dam by water in either direction at any time of the year.

(*Id.* at 1–2).

Dock Partners does not dispute any of these statements made by Houston about Lake Conroe. Instead, Dock Partners argues that a manmade reservoir need not be currently used for commercial navigation to be considered a navigable waterway. (*See* Doc. No. 8 at 4). Kelldorf agrees that this is a correct statement of the law. (Doc. No. 11 at 4–5). Nevertheless, Dock Partners has provided no evidence that contests Kelldorf's evidence that Lake Conroe is not currently, *nor ever has been*, able to be used for commercial navigation. In addition, Dock Partners asserts that the fact that Lake Conroe is dammed does not preclude its being considered a navigable water for the purposes of admiralty jurisdiction. (*See* Doc. No. 8 at 5). Even assuming this is a correct statement of the law,[2] Dock Partners still has provided the Court no evidence that, despite its dam, Lake Conroe is commercially navigable.

In contrast, the evidence that Kelldorf has provided puts this case on all fours with *Hardwick v. Pro-Line Boats, Inc.*, 895 F.Supp. 145, 146–47 (S.D. Tex. 1995). There, the court concluded that Lake Houston, which is a sister lake of Lake Conroe and similarly situated, was

---

[2] There is, however, precedent from this District to the contrary. *See Hardwick v. Pro-Line Boats, Inc.*, 895 F.Supp. 145, 147 (S.D. Tex. 1995) (pointing out that damming a naturally navigable water does not limit Congress' Commerce Clause authority to regulate it, but does impact the judiciary's admiralty jurisdiction because "Congress' Commerce power" is "broader than the Court's admiralty jurisdiction").

6

not a navigable water for purposes of admiralty jurisdiction. *Hardwick*, 895 at 149. Crucial to the court's determination was the fact that Lake Houston is "entirely landlocked" and "not capable of being used for interstate commerce of any kind in its present condition." *Id.* at 148. The fact that Lake Houston was created by damming the San Jacinto River, which is a navigable river, did *not* make Lake Houston "navigable" for jurisdictional purposes. *Id.* The court cited to an analogous Fifth Circuit opinion in which the Circuit held that the Crooked Creek Reservoir is Louisiana was not a navigable waterway because "Crooked Creek is located entirely within Evangeline Parish and the state of Louisiana. Vessels cannot access Bayou Nezbique because of the dam. Nor can they travel interstate to the waters of Crooked Creek." *Id.* at 149 (quoting *Guillory v. Outboard Motor Corp.*, 956 F.2d 114, 115 (5th Cir. 1992). The affidavit of Houston that Kelldorf provided persuades the Court that Lake Conroe is equally a non-navigable waterway. Accordingly, this Court's admiralty jurisdiction does not extend to it. Dock Partners has provided the Court no other basis for jurisdiction, so this case must be dismissed for lack of subject matter jurisdiction.

### IV. Conclusion

For the foregoing reasons, Kelldorf's motion to dismiss is granted. This case is hereby dismissed.

Signed at Houston, Texas, this 9th day of February, 2021.

Andrew S. Hanen
United States District Judge